COUNTY OF HAMILTON
IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT CHATTANOOGA

FILED
SEP 1 2026
Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

| | |
|---|---|
| **CATHY EPPINGER**<br>Plaintiff, | **CIVIL ACTION**<br>1:26-cv-250 |
| V. | |
| **UNIVERSITY OF TENNESSEE AT CHATTANOOGA**<br>Defendant, | **JURY TRIAL DEMAND** |

**PROTECTIVE COMPLAINT TO PRESERVE PLAINTIFF'S CLAIM UNDER 42 U.S.C. § 1981, ENFORCED THROUGH 42 U.S.C. § 1983 WHILE RULE 59(e) AND RULE 60(b) MOTIONS REMAIN PENDING**

Plaintiff files this protective complaint to preserve the timely assertion of the claim. The underlying factual allegations arise from the same events at issue in **Case No 1:21-cv-00268 KAC-CHS**. This protective complaint is filed to preserve the timely assertion of Plaintiff's claim under 42 U.S.C. § 1981, enforced through 42 U.S.C. § 1983, while Plaintiff's Rule 59(e) and Rule 60(b) motions remain pending in a separate action.

## I. JURISDICTION

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under federal law, including 42 U.S.C. § 1981, enforceable through 42 U.S.C. § 1983. This action includes claims for race discrimination and retaliation under 42 U.S.C. § 1981, enforceable through 42 U.S.C. § 1983.

## II. VENUE

2. Venue is proper in this District because the events giving rise to these claims occurred within this District.

## III. PARTIES

3. Plaintiff Eppinger is an African American woman, and a resident of Hamilton County, Tennessee. Plaintiff was an employee of University of Tennessee at Chattanooga until terminated on September 13, 2022.

4. Defendant, University of Tennessee, located in Chattanooga, Tennessee is an employer and is subject to 42 U.S.C. § 1981, enforceable through 42 U.S.C. § 1983.

5. Defendant, University of Tennessee, at Chattanooga may be served through its Office of General Counsel at Chattanooga, Tennessee.

## BACKGROUND

6. Plaintiff previously filed a Motion to Amend in the related action seeking to assert claims under 42 U.S.C. § 1981 through 42 U.S.C. § 1983. That motion, together with Plaintiff's Rule 59(e) and Rule 60(b) motions, remains pending. This protective complaint is filed solely to avoid any potential statute of limitations issue while those motions remain under advisement. Plaintiff files this action as a protective complaint to preserve claims arising from the facts and circumstances alleged herein and to prevent the possible expiration of the applicable statute of limitations while related post-judgment proceedings remain pending. This filing is submitted for the limited purpose of preventing an expired statute of limitation of Plaintiff's claims. Accordingly, only a representative summary of the relevant facts is included. Plaintiff reserves the right to rely upon additional facts, testimony, and exhibits contained in the record as appropriate.

7. Plaintiff does not waive any claims, defenses, or rights available under federal and/or state law if applicable. Nothing contained in this Complaint is intended to waive, abandon, supersede, or withdraw any claims previously asserted in the related action, including claims asserted under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, or the Age Discrimination in Employment Act. This action is filed solely as a protective measure to prevent the possible expiration of the applicable statute of limitations. Accordingly, this Complaint contains a representative summary of the relevant factual allegations. Plaintiff reserves the right to rely upon, reference, or otherwise present additional facts, testimony, and exhibits from the related proceedings to the extent permitted by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and any applicable order of the Court.

8. Plaintiff incorporates by reference paragraphs 1 through 127 as though fully set forth herein, **see civil action no. 1:21cv-00238-KAC-CHS.**

9. Plaintiff files this action to preserve claims before expiration of any applicable statute of limitations.

10. Plaintiff reserves the right to amend this Complaint as permitted by law and the Federal Rules of Civil Procedure

## IV. STATEMENT OF FACTS

11. Plaintiff filed this action on September 1, 2026.
12. Plaintiff filed a Motion to Expedite on August 10, 2026 [Doc 178].
13. Plaintiff filed a Motion to Preserve 42 U.S.C. § 1981 claim enforced through 42 U.S.C. § 1983. July 9, 2026, [Doc 177].

14. Plaintiff filed motion for targeted redaction of Identifying information, May 13. 2026 [Doc 176].

15. The Court Denied motion to seal May 12, 2026, [Docs 141,149, 151, 154, 162 ] and Grant supplement Brief Nunc Pro Tunc [Docs 138, 139, 168, 169] and will also consider evidence attached.

16. The Court entered summary judgment on July 24, 2025, [Docs. 134-136].

17. Plaintiff timely filed a Rule 59(e) motion on July 25, 2025, [Docs 137].

18. Plaintiff timely filed a Rule 60(b) motion. September 2, 2025 [Docs 145-146].

19. Plaintiff Filed Proposed Amended Complain September 2, 2025, [Doc 147].

20. Those motions remain pending.

21. Plaintiff believes the statute of limitations on a potential 42 U.S.C. § 1981 claim enforced through 42 U.S.C. § 1983 is approaching.

22. Plaintiff was employed by Defendant from November 2012 to September 2022

23. Defendant did not post lead role positions for competitive application.

24. Plaintiff was not given the opportunity to apply for those positions.

25. Defendant selected employees for lead roles without posting the positions.

26. Caucasian employees were selected for lead roles without a competitive application process

27. Plaintiff, an African American employee, complained of race discrimination.

28. Plaintiff subsequently applied for the same positions as the selected Caucasian employees.

29. According to the record, the selected Caucasian employees possessed less education and less relevant on-the-job experience than Plaintiff.

30. Plaintiff met the qualifications for those positions.

31. Defendant promoted Caucasian employees to lead positions.

32. Plaintiff possessed a bachelor's degree and fifteen years of relevant experience.

33. The selected Caucasian employees possessed less education and less relevant experience than Plaintiff.

34. Plaintiff performed substantially the same core duties as the promoted employee.

35. Plaintiff's assigned duties were removed and given to promoted employee

36. Defendant denied Plaintiff equal promotional opportunities.

37. Plaintiff filed charges relating to the alleged discrimination.

38. Plaintiff files this protective complaint because post-judgment motions remain pending in a related action and Plaintiff seeks to avoid any potential statute of limitations issue.

## V. CAUSE OF ACTION

39. Defendant violated 42 U.S.C. § 1981 through § 1983.

**COUNT I – RACE DISCRIMINATION** - (Failure to Promote / Disparate Treatment) - (42 U.S.C. §1981 enforced thru §1983)

40. Defendant treated Plaintiff less favorably than similarly situated Caucasian employees with respect to promotions, applications, interviews and advancement opportunities. See, Docs 168, 169 and 170, Tables A-D: Comparative Employees, Job Postings, Promotion Opportunities, and role creation.

41. Plaintiff was qualified for promotional and advancement opportunities within Defendant's organization. See Table I, Doc 169 at pg.7 ¶ 1

42. Plaintiff performed the same core duties that were later assigned to the promoted employee. See Doc 61 at Exhibits 12, 1-10 and Exhibit 13.

43. Plaintiff requested the qualifications for the promotional position at the time of the selection but was not provided with those qualifications despite the request. See Doc 61, Exhibit 14, 1-2; Request dated Wednesday July 13, 2020; at pg. 2. Employer response date Wednesday July 15, 2020, see Doc 61 Exhibit 14 at pg. 1.

44. Written qualifications for the Business Manager position not posted were first produced approximately three years later April 24, 2023, DIS_00157, Exhibit, 016, [Doc 177], Exhibit H-45A, Interrogatory at pg. 4 ¶ 5 and Exhibit H-45B top of pg. 5 and H-45B-1 at pg. 6 ¶ 1,2 and ¶ Line 7.

45. Plaintiff requested the position qualifications on July 13, 2020.

46. Following Plaintiff's three-year request, Defendant responded to Interrogatory (Set One) concerning the qualifications for the Lead position.

47. The document bears a date of April 24, 2023. See [Doc 177] H-C at pg. 15. And H-C-1 at pg. 16.

48. Plaintiff did not receive the qualification list at the time of the promotion decision.

49. In response to Interrogatory No. 6, Defendant identified Employee P's qualifications but did not identify the qualifications of Employee O, Q, N. Instead, Defendant stated that other managers would have information regarding Employee 's qualifications. See [Doc 177] H-45D at pg. 7 ¶¶ 2 and 3.

50. Defendant further stated that Employees N and Q never served in Lead roles. Defendants' own reports describe Employees N and Q as serving in Lead roles during the relevant period.

See [Doc 177] Exhibit H-46A UT_795 and Exhibit H-46B UT_796. See [Doc 177] Exhibit H-46C UT Salary database

51. The promotional position was not posted, and Plaintiff was not afforded an opportunity to apply or compete. See Doc 61 Exhibit 14 at pg. 1.

52. The foregoing documents provide the factual basis for Plaintiff's contention that Plaintiff was denied a fair opportunity to compete for promotional and advancement opportunities. See, Doc 168-170 Tables A-D.

53. Plaintiff applied for numerous positions never selected for interviews or promotion. See Original Complaint, Doc. 61 Exhibit 4, 1-17

54. Defendant selected similarly situated Caucasian employees for promotional and lead positions. See, Doc. 169, Table 1 at pgs. 7-9. Doc 170, Table 1 at pgs. 5-7.

55. Plaintiff was denied the opportunity to apply for or compete for promotional and lead positions that were made available to similarly situated Caucasian employees. See Doc 61 Exhibit 14 at pg. 1

56. Plaintiff was treated less favorably than similarly situated Caucasian employees with respect to promotions and advancement opportunities. See, Doc. 169, Table 1 at pgs. 7-9. Doc 170, Table 1 at pgs. 5-7.

57. Defendant admitted that Plaintiff was never promoted during Plaintiff's approximately 10 years of employment with Defendant. Defendant also admitted Plaintiff received a pay increase [See Doc 61 Exhibit 11] from $15.14 to 19.00 hourly, on December 11, 2020. See Doc 75 at pg. 8, ¶ 26, and

58. Two days after THRC sent letter on December 09, 2020, of a charge of employment discrimination based on race, etc., see Doc 61, Exhibit 10 at pgs. 1-2.

59. Employees with a qualifying write-up/performance issues are not eligible for a pay increase, and the employer nevertheless gave the employee a raise, Doc 61 Exhibit 11. See [Doc 177], Exhibit H-43A at pg. 3 ¶ 6 and confirmed email from Human Resources, [Doc 177] Exhibit H-43B, DIS_00059 ¶ 1 and 2.

60. Defendant testified that all employees received annual performance reviews for 2020 except Plaintiff. See Manager's Deposition, [Doc 177] Exhibit H-42G, 24:1-25.

61. Plaintiff did not receive an annual performance review for Year 2020 due to disciplinary action. See Manager's Deposition, [Doc 177] Exhibit H-42G, 24:21-24.

62. Defendant later stated the omission was due to the Defendant had recently issued a Final written warning regarding workplace behavior in April of 2021. See Doc 75 at pg.10 ¶ 38.

63. Defendant's review period states Staff employees will be evaluated based on the calendar year January through December. See [Doc 177] Exhibit H-43C at page 1¶3 at [review period]

64. Plaintiff contends that this evidence demonstrates inconsistent application of Defendant's performance review policy and should be considered together with the remaining evidence regarding Plaintiff's discrimination claim, and

65. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages.

66. Defendant treated Plaintiff less favorably than similarly situated Caucasian employees.

67. Defendants' actions were motivated, in whole or in part, by race.

68. Defendant discriminated against Plaintiff through disparate treatment compared to similarly situated Caucasian employees, in violation of 42 U.S.C. § 1981, enforceable through 42 U.S.C. § 1983.

## COUNT II – RETAILATION- (42 U.S.C. §1981 enforced thru §1983)

69. After Plaintiff complained to Management and Human Resources, Defendant subjected Plaintiff to adverse employment actions not imposed upon employees who did not engage in protected activity:

70. December 21, 2020 , Plaintiff received a telephone call from Plaintiffs manager. This telephone call was the first event in the sequence of conduct alleged in this Complaint. see, Doc 61 Exhibit 17 of 3 at pgs. 1 and 2.

71. Issuing Plaintiffs first written warning, a Final Written Warning, after approximately 10 years of employment. See Doc 61 Exhibit 19 of 2 at pg. 1 and 2.

72. On May 12, 2022, Defendant issued Plaintiffs first negative performance evaluation following years of favorable performance evaluations and, on the same date, placed Plaintiff on a Performance Improvement Plan (PIP). See Doc 61 Exhibit 8 of 10 at pgs. 1-10.

73. The Performance Review Policy states that supervisors "should" request a self-evaluation See Doc 61 Exhibit 23.

74. HR Representative testified that the policy does not require a self-evaluation. See [Doc 177] Exhibit H-42F ¶ 1 time stamp (13:33)

75. Plaintiff was placed on a Performance Improvement Plan contemporaneously with the negative performance evaluation. See Doc 61 Exhibit 8 of 10 at pg. 6-10.

76. Plaintiff completed 10-hour training in connection with PIP trainings were not acknowledge in termination report. See Doc 61 Exhibit 27 of 14 at pg. 1-3.

77. During deposition, Defendant's representative testified that Plaintiff's completed 10-trainings were "not relevant to her termination." This testimony directly contradicts earlier HR statements assuring Plaintiff that "training counts toward your PIP," as well as the contents of the PIP itself, which listed the same subject areas later covered by the 10-trainings. Defendant's

shifting position demonstrates pretext and selective disregard of evidence favorable to Plaintiff, constituting extraordinary circumstances under Rule 60(b)(6) showing Defendant's deposition admission that trainings were 'not relevant to termination,' contradicting HR's earlier statement that they counted toward the PIP." Defendant's omission of Plaintiff's completed 10-trainings from the termination documentation demonstrates selective recordkeeping and supports Plaintiff's claim that the termination decision was predetermined.[1] See Exhibit M-5(a) M-5(b) Audio. [Doc 177] Exhibit H-42E ¶ 2 and 3, by Rev.com, Doc 75 at pg. 20 ¶ 82, and [Doc 177], Exhibit H-42E ¶ 2 and 3 HR deposition by Rev.com.

78. HR Representative testified that Plaintiff's 10-training was not considered in the termination decision. Plaintiff's 10- hour trainings relate to accusation written in the Performance Improvement Plan (PIP) See Exhibit H-42D (64:15-20).

79. Plaintiff requested approval for Procurement Card after eligible and Manager ignored it over 20 times. See [Doc 177] H-39B.

80. October 5, 2021, at 12:26 pm, Following Plaintiff's inquiry, Defendant removed E-termination assignment and reassigned Plaintiff's job duties to promoted employee. October 5, 2021, at 2:22pm. Doc 61 See Exhibit 32 of 7 at pg. 7 Plaintiff's inquiry and pg. 6 Manager removal.

81. Denied Plaintiff promotional opportunities when duties are identical. See Doc 61 Exhibit 12 of 10 below:

82. Email 1 - June 12, 2022, ¶ 4, 5 and 6 – invoicing

83. Email 2 -4 February 7, 2022 – reconciliation (electronically)

---

[1] A PIP and termination are connected stages of one disciplinary process, the PIP identifies areas for improvement, and the termination report should address the same issues. Defendant's failure to reference the PIP or Plaintiff's completed trainings suggests a break in policy or selective omission.

84. Email 4 Employee working on reconciliation

85. Email 3 Plaintiff responses; promoted employee responses - reconciliation

86. Email 2 Plaintiff responses; promoted employee responses – reconciliation

87. Email 5 Manager's email ¶ 2 promoted employee and Plaintiff process invoices

88. Email 6 Manager's email ¶ 3 since you both (Plaintiff/promoted employee) working on invoicing.

89. Email 7 and 8 Reoccurring Duties at pg. 7/8 Departmental wide reoccurring duties. [Doc 177], Exhibit H-41A Departmental wide Procurement Card Transactions reoccurring (Monthly)

90. Email 9 Manager's email ¶ Account Payable contact both Plaintiff and promoted employee.

91. Email 10 Plaintiff email inquiry, "Who's does reconciliation" promoted employee response, "I do is there something I need to address"

92. August 17, 2021, Email from Manager removed Motor pool invoice from Plaintiff to employee. See Doc 61 Exhibit 13 at ¶ 1. And

93. An assignment that Plaintiff had invoiced since 2015 department hired year.

94. Plaintiff reported the alleged harassing conduct to Defendant's Human Resources Department. Doc 61, See Doc. 61 Exhibit 28 of 2 at pg. 1.

95. Employer becomes aware of federal legal scrutiny, Plaintiff is reclassified two days after THRC notice of charge. See Doc 61 Exhibit 10 of 2 at pg. 1 and 2. See also, herein at ¶¶ 166 thru 177 and at ¶ 151.

96. Increasing scrutiny of Plaintiff's work beyond that imposed on similarly situated employees. Doc 61, Exhibit 8 of 10

97. Subjecting Plaintiff to disciplinary actions not imposed on similarly situated employees for comparable conduct.

98. Plaintiff Denied other benefits (exempt status) available to employees who did not engage in protected activity: See [Doc 177], Exhibit H-42, Doc 75 at pgs. 11 and 12 lines 43.

99. [Doc 177] Exhibit H-42A - HR Deposition 86: lines 5-15

100. [Doc 177] Exhibit H-42B - HR Deposition 86:lines 22-25

101. [Doc 177] Exhibit H-42C - HR Deposition 87: lines 1-12.

102. [Doc 177] Exhibit H-42D - HR Deposition 64: lines 15-20

103. Defendant substantially increased Plaintiffs workload. Plaintiff contends that the assigned workload could not reasonably be completed during regular working hours and could only be completed if Plaintiff performed the work at home. See [Doc 177] Exhibit H-44B, pg. 1, ¶ 4 (bullets) (bullets); and Exhibit H-44A pg. 1, ¶ 1, 2 and 3 at (arrows).

104. Terminating Plaintiffs employment. Doc 61 Exhibit 27 of at pgs. 2 and 2.

105. After Plaintiff filed an internal complaint of discrimination, Defendant's treatment toward Plaintiff changed noticeably. Supervisors and managers began scrutinizing Plaintiff's work more closely, excluding her from communications, and documenting minor issues that had not previously been raised.

106. Over time, Defendant appeared to struggle to identify a legitimate reason to justify terminating Plaintiff's employment. The pattern of increased monitoring and creation of disciplinary notes suggests a deliberate effort to build a record of alleged performance concerns after the protected complaint.

107. When no substantiated misconduct could be established, Defendant manufactured a pretextual basis for termination, asserting conduct or performance deficiencies inconsistent with

Plaintiff's prior evaluations and work history. Doc 61 Exhibit 7 of 16 at pgs. 7-16. Defendant's written filing acknowledges that Plaintiff received favorable performance evaluations from 2015-2019. Doc 75 at pg. 9 ¶ 31.

108. The chronology of Defendant's actions following the alleged misconduct is inconsistent with Defendant's assertion that Plaintiff's conduct warranted immediate termination. Plaintiff relies on the documented sequence of events, Defendant's employment records, witness testimony, and other admissible evidence for the Court's evaluation. See Doc 169 Tables A-D.

109. Evidence of line items 65-87 and herein to name a few:

110. Defendant: contends: October 2021 Defendant instructed Plaintiff to create online calendar and the project was not complete until February 2022.

111. Plaintiff 's disputed As evidence by ( Doc 120 Exhibit 018 DIS_00086, Eppinger created calendar on October 27, 2021. As evidence, Doc 120 (DIS_00085, Exhibit, 018) Per EMS calendar went live on Wednesday, November 11, 2021.

112. PIP – Procurement Card 15-day timeline:

113. Per PIP – P. Card required completion by May 12, 2022 (15 days after the May 12th report date). [Doc 177] H-39A ¶ 1 bullet 4

114. Due date May 27, 2022

115. Plaintiff completed the P. Card training on May 23, 2022. See [Doc 177] H-39B line 1

116. The system recorded the completion.

117. Manager approval remained pending after more than 20 ignored notifications and was not approved until July 5, 2022. See [Doc 177] H-39B lines 4-31 – ignored notifications

118. Manager Deposition – Manager's reason (On Maternity leave). See [Doc 177] H-42H 108:7-8, and witness Authenticated the document (107:1-23).

119. June 24th Manager emailed Plaintiff work related emails. See [Doc 177] H-39C at pgs.1/2

120. June 30th Manager emailed Plaintiff work related emails. See [Doc 177] H-39D at pg. 1

121. Plaintiff completed the P. Card training on May 23, and the system recorded the completion. The system generated multiple approval notifications to the Manager, including one on June 24th and June 30th the same date the Manager emailed Plaintiff separate work-related emails. Manager approval was entered on July 5. See [Doc 177] H-39C at pg.

122. The newly identified evidence, together with previously omitted ADA-awareness documentation and other evidence in the record, supports Plaintiff's request for relief under Rule 60(b)(6). Plaintiff relies upon the totality of the admissible evidence, including the chronology of events, documentary evidence, witness testimony, and Defendant's employment actions following Plaintiff's protected activity. .

123. Plaintiff received no written warnings prior to the Final Written Warning on April 16, 2021. See Doc 61 Exhibit 19 of 2.

124. The disciplinary policy HR0525 in effect bears an effective date of April 1, 2021, the same year Plaintiff received the Final Written Warning April 16, 2021. See Doc 61 Exhibit 20 of 4 at 1-4 pgs. Top portion ( left).

125. Defendant's progressive discipline policy provides the following disciplinary steps: See Doc. 61 Exhibit 20 of 4 at pg. 2 ¶ 3

126. Verbal written warning (to be documented by the supervisor)

127. Written warning

128. Final written warning

129. Suspension, either with or without pay; and

130. Termination

131. Manager stated he believes in second, third, fourth, and fifth chances, while the record reflects that Plaintiff's first formal disciplinary action was a Final Written Warning. See Doc 61 Exhibit 22 of 3 at pg. 2 ¶ 1

132. The record contains no prior written warning prior to the Final Written Warning on April 16, 2021.

133. Defendant advised Plaintiff to submit rebuttal but never sought justification for allegation written on Plaintiff: See Doc 61 Exhibit 26 of 9 below

134. Email 1- June 22, 2022, Plaintiff requested rebuttal materials to be covered. See ¶ 3. HR response ¶ 2.

135. Email 3 Plaintiff's questions never answered, (1)"Do you feel any accusation will be removed and labeled as false?" (2) "Why wasn't any of my training mentioned in my performance review(/)." See Doc 61 Exhibit 26 of 9 ¶ 1.

136. Email 7 Plaintiff 's request for documentation that warns her of performance issues. See Doc 61 Exhibit 26 of 9 ¶ 2.

137. Plaintiff engaged in protected activity by reporting discrimination on July 13, 2020, to Human Resources. See Doc. 61 Exhibit 14 of 2 at pg. 2 ¶ 1.

138. Plaintiff received "Right-to-Sue letters on November 18, 2022, April 28, 2022, and July 8, 2021. See Doc. 61 Exhibit 2 of 3 at pgs. 1, 2 and 3.

139. THRC issued notice of charge to employer on December 9, 2020. See Doc. 61 Exhibit 10 of 2 at page 1 and 2.

140. **Two days later,** Plaintiff was called in and offered a raise December 11, 2020. See Doc 61 Exhibit 11 ¶ 1 and 2.

141. Plaintiff reported discriminatory treatment on July 13, 2020. See Doc 61 Exhibit 14 of 2 at pg. 2.

142. **Defendant deviated** from established performance-management procedure. See Doc 61 Exhibit 23 ¶ 2 and Line a.

143. Defendant statement just because it is written every step of Policy does not have to be followed. See [Doc 177] Exhibit H-42F ¶ 1.

144. Following the investigation, Defendant issued Plaintiff a Final Written Warning a negative Performance Review and placed on Performance Improvement Plan (PIP), despite

145. Plaintiff having no prior written disciplinary warnings. Defendant subsequently offered Plaintiff a retirement incentive July 25, 2022. After Plaintiff declined the offer on July 26, 2022, Defendant terminated Plaintiff's employment approximately two months later September 13, 2022. (Temporal proximity.).

146. No prior written discipline in 10 years; first discipline was a Final Written Warning. – April 16, 2021.

147. Negative Performance Review AND Performance Improvement Plan – May 12, 2022.

148. Offered Retirement Incentive – July 25, 2022.

149. Plaintiff declined offered – July 26, 2022.

150. Offer to Resigned position – September 12, 2022.

151. Plaintiff verbally declined September 12, 2022.

152. HR request to think about and send via email – September 12, 2022.

153. Plaintiff sent email declined to resigned position - September 13, 2022.

154. Termination letter via email – September 13, 2022.

155. **Investigation Conclusion,** HR credited manager's account, issued Final written discipline to Plaintiff, and took no disciplinary action against manager despite both parties was involved, no discipline was imposed on the manager on April 16, 2021. Manager remains employed as of September 13, 2022. See Doc 61, 19 of 2.

156. April 2021 Manager loudly yelled, "Get out of my office," within earshot of nearby co-workers, and then.

157. Plaintiff informed the Manager, "I see what you're trying to do." In response, the Manager laughed and did not deny Plaintiff's statement.

158. May 12, 2022, Defendant issued Plaintiff a negative performance review and simultaneously placed Plaintiff on a Performance Improvement Plan ("PIP"), despite the absence of prior documented warnings, coaching, counseling, or progressive discipline. See Doc 61 Exhibit 8 of 10 at pgs. 6-10

159. Performance review annual year 2021 omitted accomplishments despite contemporaneous records documenting accomplishments. See Doc 75 at pg.17 at ¶ 72. And Doc 61 at pg.22 of 3.

160. The policy states that supervisors should ask employees to complete a self-evaluation; Plaintiff was not asked to complete one. See Doc 61 Exhibit 23 at Line 2 A-F.

161. The negative Performance Evaluation does not address Plaintiff's documented 2021 accomplishments. See, Doc 61 Exhibit 22 of 3 at pg. 1

162. The performance review **policy** bears an effective date of January 11, 2022, the same year Plaintiff's employment was terminated September 13, 2022, and

163. May 12, 2022, the day following the issuance of the negative performance review and Performance Improvement Plan ("PIP"), Plaintiff submitted a complaint to a higher-level

manager and Human Resources concerning the corrective action and the absence of prior warning or coaching, Plaintiff complaint was ignored.

164. Thereafter, Plaintiff sought relief from alleged harassment; the conduct allegedly continued, followed by additional adverse employment actions. See Doc 61 28 of 2 at pg. 1 ¶ 2.

165. Shortly thereafter, Plaintiff was terminated on September 13, 2022 . See Doc 61 27 of 14 pgs. 1-3.

166. Similarly situated HR representative outside Plaintiff's protected racial class received more favorable treatment for comparable conduct.. (See herein lines 166-176).

167. Similarly situated male manager received more favorable treatment for comparable conduct. (See herein line 151).

168. Certain supporting materials have previously been filed in Case No. [1:21-cv-00268-KAC-CHS] dated October 27, 2025 [Docs 142-170] and October 28, 2025 [170-01].

169. Plaintiff continued to pursue her discrimination claims in good faith, consistent with the applicable administrative and judicial procedures.

170. **Clarification Regarding Disclosure of Personally Identifiable Information (PII).** Plaintiff respectfully submits additional facts supporting relief under 42 U.S.C. §1981 enforced thru §1983. After Plaintiff engaged in protected activity, Defendant, through its Human Resources Department, transmitted documents containing Plaintiff's full Social Security number and other Personally Identifiable Information ("PII") to Plaintiff by ordinary e-mail, describing the disclosure as made "for convenience." Transmission of un-redacted PII through unsecured e-mail violated accepted confidentiality and data-security standards, including Defendant's own internal policy. Defendant's amended answer. See Doc 75 pg. 2 ¶ 1.

171. The disclosure occurred while Plaintiff was under active protected status and immediately before termination, evidencing retaliatory disregard for Plaintiff's privacy and safety. Defendant's Attorney has since asserted that the disclosure was necessary "so Plaintiff could sign an authorization form to permit release of medical records pursuant to court order." Plaintiff does not dispute that an authorization was required; however, transmitting a document containing a full Social Security number by unencrypted e-mail was unnecessary and contrary to proper protocol. The document could have been redacted to display only the last two digits or transmitted by password-protected means. Doc 61, Exhibit 3 of 3 at pg. 1¶ 1

172. Defendant's representative testified that Plaintiffs Social Security number was *not* provided to Defendant's counsel for tax, insurance purposes and/or court order. See [Doc 177], H42I and H-42J.

173. The representative provided a different explanation for the disclosure, as reflected in the record. See herein at line 166 and See Doc 75 pg. 2 ¶ 1.

174. Defendant's confidentiality policy states that confidential information is shared only with employees who need the information to respond to or address a report. See, [Doc 177] Exhibit H-43D ¶ 1 and H43D ¶ 2.

175. According to the Salary Database Defendant's Attorney name is not listed as an employee. See Doc 120, Exhibit 111, DIS_00050, DIS_00058.

176. **Unequal enforcement of confidentiality standards and supports an inference of pretext and retaliation.** By contrast, Plaintiff's alleged conduct, merely saving a file name referencing another employee's FMLA matter, was treated as terminable misconduct. Defendants own unredacted disclosure of Plaintiff's PII was excused as "necessary" or "for

convenience." This disparity demonstrates unequal enforcement of confidentiality standards and supports an inference of pretext and retaliation.

177. Even if inadvertent, Defendant's conduct constitutes a **breach of confidentiality under the Americans with Disabilities Act, 42 U.S.C. § 12112(d)(3)-(4), and retaliation under Title VII, 42 U.S.C. § 2000e-3(a).** If such disclosure and termination were also motivated by racial animus or by Plaintiff's opposition to race-based discrimination, the same facts further establish a violation of **42 U.S.C. § 1981**, enforceable through **42 U.S.C. § 1983**, because Defendant's agents acted under color of state law and deprived Plaintiff of equal contractual rights. Because these facts and Defendant's post-judgment justification were not fully before the Court, reconsideration under Rule 60(b)(6) is warranted to prevent manifest injustice and to ensure the record reflects the full context of Defendant's inconsistent and retaliatory conduct.

178. Plaintiff appealed the initial unemployment determination. The unemployment decision was subsequently reversed on appeal. See [Doc 177] Exhibit H-40B at pg. 1 ¶ 5 and [Doc 177] Exhibit H-40C at pg. 2 ¶ 2-6. See [Doc 177] Exhibit H-40A -Certification.

179. **Purpose:** Provides background regarding the unemployment proceedings and supports the consistency of Plaintiff's account concerning the reason for termination.

180. Plaintiff offers the unemployment reversal for the limited purpose of evaluating Defendant's stated reason for termination and whether that explanation is consistent with the record as a whole. Plaintiff does not contend that the unemployment decision, standing alone, establishes discrimination or retaliation. The unemployment reversal is offered as additional evidence to be considered together with the remaining admissible evidence bearing on Defendant's asserted reason for the termination.

181. Plaintiff does not refile the referenced documents herein. In order to preserve confidentiality and avoid duplicative exhibits, Plaintiff cites the previously filed docket entries and corresponding page references where the supporting documents may be found.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff;

B. Award compensatory damages as permitted by law;

C. Award equitable and injunctive relief as appropriate;

D. Award costs and any other relief the Court deems just and proper.

E. Plaintiff respectfully requests that this action be consolidated with the previously filed action if the Court determines consolidation is appropriate under F.R.C. P. Rule 42 (a).

Respectfully Submitted,

Cathy Eppinger, Pro Se Plaintiff
1229 Gunbarrel Road
Chattanooga, Tennessee 37421
keppingr@epbfi.com

September 1, 2026